286600787

## ADJUSTABLE RATE NOTE
(LIBOR 6 Month Index (As Published In The Wall Street Journal) - Rate Caps)

THIS NOTE CONTAINS PROVISIONS ALLOWING FOR CHANGES IN MY INTEREST RATE AND MY MONTHLY PAYMENT. THIS NOTE LIMITS THE AMOUNT MY INTEREST RATE CAN CHANGE AT ANY ONE TIME AND THE MAXIMUM RATE I MUST PAY.

THIS LOAN IS PAYABLE IN FULL AT MATURITY. YOU MUST REPAY THE ENTIRE PRINCIPAL BALANCE OF THE LOAN AND UNPAID INTEREST THEN DUE. THE LENDER IS UNDER NO OBLIGATION TO REFINANCE THE LOAN AT THAT TIME. YOU WILL, THEREFORE, BE REQUIRED TO MAKE PAYMENT OUT OF OTHER ASSETS THAT YOU MAY OWN, OR YOU WILL HAVE TO FIND A LENDER, WHICH MAY BE THE LENDER YOU HAVE THIS LOAN WITH, WILLING TO LEND YOU THE MONEY. IF YOU REFINANCE THIS LOAN AT MATURITY, YOU MAY HAVE TO PAY SOME OR ALL OF THE CLOSING COSTS NORMALLY ASSOCIATED WITH A NEW LOAN EVEN IF YOU OBTAIN REFINANCING FROM THE SAME LENDER.

MAY 31, 2006                    LEWISVILLE, TX 75067
[Date]                          [City]            [State]

6355 PEAK VISTA CIRCLE, COLORADO SPRINGS, COLORADO 80918
[Property Address]

1. BORROWER'S PROMISE TO PAY
In return for a loan that I have received, I promise to pay U.S. $ 225,600.00 (this amount is called "principal"), plus interest, to the order of the Lender. The Lender is

CTX MORTGAGE COMPANY, LLC.

I understand that the Lender may transfer this Note. The Lender or anyone who takes this Note by transfer and who is entitled to receive payments under this Note is called the "Note Holder."

2. INTEREST
Interest will be charged on unpaid principal until the full amount of principal has been paid. I will pay interest at a yearly rate of 6.500 %. The interest rate I will pay may change in accordance with Section 4 of this Note.
The interest rate required by this Section 2 and Section 4 of this Note is the rate I will pay both before and after any default described in Section 7(B) of this Note.

3. PAYMENTS
(A) Time and Place of Payments
I will pay principal and interest by making payments every month.
I will make my monthly payments on the 1st day of each month beginning on JULY 1, 2006. I will make these payments every month until I have paid all of the principal and interest and any other charges described below that I may owe under this Note. My monthly payments will be applied to interest before principal. If, on JUNE 1, 2036, I still owe amounts under this Note, I will pay those amounts in full on that date, which is called the "Maturity Date."
I will make my monthly payments at P.O. BOX 199400
DALLAS, TX 75219-9077
or at a different place if required by the Note Holder.

(B) Amount of My Initial Monthly Payments
Each of my initial monthly payments will be in the amount of U.S. $ 1,320.80 . This amount may change.

(C) Monthly Payment Changes
Changes in my monthly payment will reflect changes in the unpaid principal of my loan and in the interest rate that I must pay. The Note Holder will determine my new interest rate and the changed amount of my monthly payment in accordance with Section 4 of this Note.

4. INTEREST RATE AND MONTHLY PAYMENT CHANGES
(A) Change Dates
The interest rate I will pay may change on the 1st day of JUNE, 2008, and on that day every 6TH month thereafter. Each date on which my interest rate could change is called a "Change Date."

MULTISTATE ADJUSTABLE RATE BALLOON NOTE
CB840-1 (083005)                    Page 1 of 4                    Initials: [signature]



EXHIBIT A

**(B) The Index**

Beginning with the first Change Date, my interest rate will be based on an Index. The "Index" is the average of interbank offered rates for 6 month U.S. dollar-denominated deposits in the London market ("LIBOR"), as published in *The Wall Street Journal*. The most recent Index figure available as of the first business day of the month immediately preceding the month in which the Change Date occurs is called the "Current Index."

If the Index is no longer available, the Note Holder will choose a new index that is based upon comparable information. The Note Holder will give me notice of this choice.

**(C) Calculation of Changes**

Before each Change Date, the Note Holder will calculate my new interest rate by adding FOUR AND 860/1000 percentage point(s) ( 4.860 %) to the Current Index. The Note Holder will then round the result of this addition to the nearest one-eighth of one percentage point (0.125%). Subject to the limits stated in Section 4(D) below, this rounded amount will be my new interest rate until the next Change Date.

The Note Holder will then determine the amount of the monthly payment that would be sufficient to repay the unpaid principal that I am expected to owe at the Change Date based on the remaining term of the scheduled 40 year amortization period at my new interest rate in substantially equal payments. The result of this calculation will be the new amount of my monthly payment.

**(D) Limits on Interest Rate Changes**

The interest rate I am required to pay at the first Change Date will not be greater than 9.500 % or less than 6.500 %. Thereafter, my interest rate will never be increased or decreased on any single Change Date by more than ONE AND 500/1000 percentage points(s) ( 1.500 %) from the rate of interest I have been paying for the preceding 6 months. My interest rate will never be greater than 13.500 % or lower than 6.500 %.

**(E) Effective Date of Changes**

My new interest rate will become effective on each Change Date. I will pay the amount of my new monthly payment beginning on the first monthly payment date after the Change Date until the amount of my monthly payment changes again.

**(F) Notice of Changes**

The Note Holder will deliver or mail to me a notice of any changes in my interest rate and the amount of my monthly payment before the effective date of any change. The notice will include information required by law to be given me and also the telephone number of a person who will answer any questions I may have regarding the notice.

**5. BORROWER'S RIGHT TO PREPAY**

I have the right to make payments of principal at any time before they are due. A prepayment of all of the unpaid principal is known as a "full prepayment." A prepayment of only part of the unpaid principal is known as a "partial prepayment."

Except as provided below, I may make a full or partial prepayment at any time. If I make a partial prepayment, there will be no changes in the due dates of my monthly payments unless the Note Holder agrees in writing to those changes. My partial prepayment may reduce the amount of my monthly payments after the first Change Date following my partial prepayment. However, any reduction due to my partial prepayment may be offset by an interest rate increase. I may make a full prepayment at any time. However, if within the first 36 months after the execution of the Mortgage, Deed of Trust or Deed to Secure Debt (the "Security Instrument"), I make any prepayment(s) within any 12-month period the total amount of which exceeds twenty percent (20%) of the original principal amount of this loan, I will pay a prepayment charge in an amount equal to the payment of six (6) months' advance interest on the amount by which the total of my prepayment(s) within that 12-month period exceeds twenty percent (20%) of the original principal amount of the loan.

**6. LOAN CHARGES**

If a law, which applies to this loan and which sets maximum loan charges, is finally interpreted so that the interest or other loan charges collected or to be collected in connection with this loan exceed the permitted limits, then: (i) any such loan charge shall be reduced by the amount necessary to reduce the charge to the permitted limit; and (ii) any sums already collected from me which exceeded permitted limits will be refunded to me. The Note Holder may choose to make this refund by reducing the principal I owe under this Note or by making a direct payment to me. If a refund reduces principal, the reduction will be treated as a partial prepayment.

ADJUSTABLE RATE BALLOON NOTE - w/PPP
CB840-P (083005)     Page 2 of 4     Initials: _____

## 7. BORROWER'S FAILURE TO PAY AS REQUIRED

(A) Late Charges for Overdue Payments

If the Note Holder has not received the full amount of any monthly payment by the end of 10 calendar days after the date it is due, I will pay a late charge to the Note Holder. The amount of the charge will be 5.00 % of my overdue payment of principal and interest. I will pay this late charge promptly but only once on each late payment.

(B) Default

If I do not pay the full amount of each monthly payment on the date it is due, I will be in default.

(C) Notice of Default

If I am in default, the Note Holder may send me a written notice telling me that if I do not pay the overdue amount by a certain date, the Note Holder may require me to pay immediately the full amount of principal that has not been paid and all the interest that I owe on that amount. That date must be at least 30 days after the date on which the notice is delivered or mailed to me.

(D) No Waiver by Note Holder

Even if, at a time when I am in default, the Note Holder does not require me to pay immediately in full as described above, the Note Holder will still have the right to do so if I am in default at a later time.

(E) Payment of Note Holder's Costs and Expenses

If the Note Holder has required me to pay immediately in full as described above, the Note Holder will have the right to be paid back by me for all of its costs and expenses in enforcing this Note to the extent not prohibited by applicable law. Those expenses include, for example, reasonable attorneys' fees.

## 8. GIVING OF NOTICES

Unless applicable law requires a different method, any notice that must be given to me under this Note will be given by delivering it or by mailing it by first class mail to me at the Property Address above or at a different address if I give the Note Holder a notice of my different address.

Unless the Note Holder requires a different method, any notice that must be given to the Note Holder under this Note will be given by mailing it by first class mail to the Note Holder at the address stated in Section 3(A) above or at a different address if I am given a notice of that different address.

## 9. OBLIGATIONS OF PERSONS UNDER THIS NOTE

If more than one person signs this Note, each person is fully and personally obligated to keep all of the promises made in this Note, including the promise to pay the full amount owed. Any person who is a guarantor, surety or endorser of this Note is also obligated to do these things. Any person who takes over these obligations, including the obligations of a guarantor, surety or endorser of this Note, is also obligated to keep all of the promises made in this Note. The Note Holder may enforce its rights under this Note against each person individually or against all of us together. This means that any one of us may be required to pay all of the amounts owed under this Note.

## 10. WAIVERS

I and any other person who has obligations under this Note waive the rights of presentment and notice of dishonor. "Presentment" means the right to require the Note Holder to demand payment of amounts due. "Notice of dishonor" means the right to require the Note Holder to give notice to other persons that amounts due have not been paid.

## 11. UNIFORM SECURED NOTE

This Note is a uniform instrument with limited variations in some jurisdictions. In addition to the protections given to the Note Holder under this Note, a Mortgage, Deed of Trust or Security Deed (the "Security Instrument"), dated the same date as this Note, protects the Note Holder from possible losses that might result if I do not keep the promises that I make in this Note. That Security Instrument describes how and under what conditions I may be required to make immediate payment in full of all amounts I owe under this Note. Some of those conditions are described as follows:

MULTISTATE ADJUSTABLE RATE BALLOON NOTE
CE840-3 (083005)    Page 3 of 4    Initials:

Transfer of the Property or a Beneficial Interest in Borrower. If all or any part of the Property or any interest in it is sold or transferred (or if a beneficial interest in Borrower is sold or transferred and Borrower is not a natural person) without Lender's prior written consent, Lender may, at its option, require immediate payment in full of all sums secured by this Security Instrument. However, this option shall not be exercised by Lender if exercise is prohibited by federal law as of the date of this Security Instrument. Lender also shall not exercise this option if: (a) Borrower causes to be submitted to Lender information required by Lender to evaluate the intended transferee as if a new loan were being made to the transferee; and (b) Lender reasonably determines that Lender's security will not be impaired by the loan assumption and that the risk of a breach of any covenant or agreement in this Security Instrument is acceptable to Lender.

To the extent permitted by applicable law, Lender may charge a reasonable fee as a condition to Lender's consent to the loan assumption. Lender also may require the transferee to sign an assumption agreement that is acceptable to Lender and that obligates the transferee to keep all the promises and agreements made in the Note and in this Security Instrument. Borrower will continue to be obligated under the Note and this Security Instrument unless Lender releases Borrower in writing.

If Lender exercises the option to require immediate payment in full, Lender shall give Borrower notice of acceleration. The notice shall provide a period of not less than 30 days from the date the notice is delivered or mailed within which Borrower must pay all sums secured by this Security Instrument. If Borrower fails to pay these sums prior to the expiration of this period, Lender may invoke any remedies permitted by this Security Instrument without further notice or demand on Borrower.

## 12. APPLICABLE LAW

This Note shall be governed by the laws of the State of  COLORADO
If a law, which applies to this loan and sets maximum loan charges is finally interpreted so that the interest and other charges collected or to be collected in connection with this loan exceed the permitted limits, then: (A) any such interest or other charge shall be reduced by the amount necessary to reduce the interest or other charge to the permitted limit; and (B) any sums already collected from me which exceed permitted limits will be refunded to me. The Note Holder may choose to make this refund by reducing the principal I owe under this Note or by making a direct payment to me. If a refund reduces principal, the reduction will be treated as a partial prepayment, but in no event will a prepayment charge be assessed if the Note Holder chooses to reduce my principal balance by applying such excess amounts.

WITNESS THE HAND(S) AND SEAL(S) OF THE UNDERSIGNED.

_____ (Seal)  _____ (Seal)
JEFFERY M. JOHNSON      -Borrower   DEB ANN JOHNSON            -Borrower
                                    BY ATTORNEY IN FACT, JEFFERY M. JOHNSON

_____ (Seal)  _____ (Seal)
                        -Borrower                              -Borrower

_____ (Seal)  _____ (Seal)
                        -Borrower                              -Borrower

_____ (Seal)  _____ (Seal)
                        -Borrower                              -Borrower

*[Sign Original Only]*

MULTISTATE ADJUSTABLE RATE BALLOON NOTE
CB440-4 (083005)                    Page 4 of 4

MAY 31, 2006                                    LEWISVILLE, TX 75067
       *Date*                          *City*                              *State*

6355 PEAK VISTA CIRCLE        COLORADO SPRINGS        COLORADO               80918
*Property Address*                   *City*                *State*            *ZIP Code*

1. **BORROWER'S PROMISE TO PAY**

    In return for a loan that I have received, I promise to pay U.S. $ 56,400.00 (this amount will be called "principal"), plus interest, to the order of the Lender. The Lender is

                          CTX MORTGAGE COMPANY, LLC.

I understand that the Lender may transfer this Note. The Lender or anyone who takes this Note by transfer and who is entitled to receive payments under this Note will be called the "Note Holder."

2. **INTEREST**

    I will pay interest at a yearly rate of     11.800     %.
    Interest will be charged on unpaid principal until the full amount of principal has been paid.

3. **PAYMENTS**

    I will pay principal and interest by making payments each month of U.S. $     571.47
    I will make my payments on the     1st     day of each month beginning on   JULY 1
    2006  . I will make these payments every month until I have paid all of the principal and interest and any other charges, described below, that I may owe under this Note. If, on   JUNE 1, 2036  , I still owe amounts under this Note, I will pay all those amounts, in full, on that date.
    I will make my monthly payments at    P.O. BOX 199400
DALLAS, TX 75219-9077                               or at a different place if required by the Note Holder.

4. **BORROWER'S FAILURE TO PAY AS REQUIRED**

    (A) **Late Charge for Overdue Payments**

    If the Note Holder has not received the full amount of any of my monthly payments by the end of    10   calendar days after the date it is due, I will pay a late charge to the Note Holder. The amount of the charge will be    5.00    % of my overdue payment. I will pay this late charge only once on any late payment.

    (B) **Default**

    If I do not pay the full amount of each monthly payment by the date stated in Section 3 above, I will be in default. Even if, at a time when I am in default, the Note Holder does not require me to pay immediately in full as described below, the Note Holder will still have the right to do so if I am in default at a later time.

    (C) **Notice from Note Holder**

    If I am in default for 10 days, the Note Holder may send me a written notice telling me that if I do not pay the overdue amount by a certain date the Note Holder may require me to pay immediately the full amount of principal which has not been paid and all the interest that I owe on that amount. That date must be at least 20 days after the date on which the notice is mailed to me or if it is not mailed, 20 days after the date on which it is delivered to me.

    (D) **Payment of Note Holder's Costs and Expenses**

    If the Note Holder has required me to pay immediately in full as described above, the Note Holder will have the right to be paid back for all of its reasonable costs and expenses to the extent not prohibited by applicable law. Those expenses include, for example, reasonable attorneys' fees.

5. **THIS NOTE SECURED BY A DEED OF TRUST**

    In addition to the protections given to the Note Holder under this Note, a Deed of Trust, dated   MAY 31,
    2006   , protects the Note Holder from possible losses which might result if I do not keep the promises which I make in this Note. That Deed of Trust describes how and under what conditions I may be required to make immediate payment in full of all amounts that I owe under this Note.

COLORADO - SECOND MORTGAGE - 1/80
Modified-75(CO)(9712) / FNMA/FHLMC 3906
CE75CO1 (020398)                    Page 1 of 2                              Initials

I hereby certify this to be a true and exact copy of the original document.

"prepayment." When I make a prepayment, I will tell the Note Holder in a letter that I am doing so. A prepayment of all of the unpaid principal is known as a "full prepayment." A prepayment of only part of the unpaid principal is known as a "partial prepayment."

Except as provided below, I may make a full prepayment or a partial prepayment without paying any penalty. The Note Holder will use all of my prepayments to reduce the amount of principal that I owe under this Note. If I make a partial prepayment, there will be no delays in the due dates or changes in the amounts of my monthly payments unless the Note Holder agrees in writing to those delays or changes. I may make a full prepayment at any time. If I choose to make a partial prepayment, the Note Holder may require me to make the prepayment on the same day that one of my monthly payments is due. The Note Holder may also require that the amount of my partial prepayment be equal to the amount of principal that would have been part of my next one or more monthly payments. However, if within the first 36 months after the execution of the Mortgage, Deed of Trust or Deed to Secure Debt (the "Security Instrument"), I make any prepayment(s) within any 12-month period the total amount of which exceeds twenty percent (20%) of the original principal amount of this loan, I will pay a prepayment charge in an amount equal to the payment of six (6) months' advance interest on the amount by which the total of my prepayment(s) within that 12-month period exceeds twenty percent (20%) of the original principal amount of the loan.

7. BORROWER'S WAIVERS

I waive my rights to require the Note Holder to do certain things. Those things are: (A) to demand payment of amounts due (known as "presentment"); (B) to give notice that amounts due have not been paid (known as "notice of dishonor"); (C) to obtain an official certification of nonpayment (known as a "protest"). Anyone else who agrees to keep the promises made in this Note, or who agrees to make payments to the Note Holder if I fail to keep my promises under this Note, or who signs this Note to transfer it to someone else also waives these rights. These persons are known as "guarantors, sureties and endorsers."

8. GIVING OF NOTICES

Any notice that must be given to me under this Note will be given by delivering it or by mailing it by certified mail addressed to me at the Property Address above. A notice will be delivered or mailed to me at a different address if I give the Note Holder a notice of my different address.

Any notice that must be given to the Note Holder under this Note will be given by mailing it by certified mail to the Note Holder at the address stated in Section 3 above. A notice will be mailed to the Note Holder at a different address if I am given a notice of that different address.

9. RESPONSIBILITY OF PERSONS UNDER THIS NOTE

If more than one person signs this Note, each of us is fully and personally obligated to pay the full amount owed and to keep all of the promises made in this Note. Any guarantor, surety, or endorser of this Note (as described in Section 7 above) is also obligated to do these things. The Note Holder may enforce its rights under this Note against each of us individually or against all of us together. This means that any one of us may be required to pay all of the amounts owed under this Note. Any person who takes over my rights or obligations under this Note will have all of my rights and must keep all of my promises made in this Note. Any person who takes over the rights or obligations of a guarantor, surety, or endorser of this Note (as described in Section 7 above) is also obligated to keep all of the promises made in this Note.

10. APPLICABLE LAW

This Note shall be governed by the laws of the State of COLORADO .
If a law, which applies to this loan and sets maximum loan charges is finally interpreted so that the interest and other charges collected or to be collected in connection with this loan exceed the permitted limits, then: (A) any such interest or other charge shall be reduced by the amount necessary to reduce the interest or other charge to the permitted limit; and (B) any sums already collected from me which exceed permitted limits will be refunded to me. The Note Holder may choose to make this refund by reducing the principal I owe under this Note or by making a direct payment to me. If a refund reduces principal, the reduction will be treated as a partial prepayment, but in no event will a prepayment charge be assessed if the Note Holder chooses to reduce my principal balance by applying such excess amounts.

_____ (Seal)
JEFFERY M. JOHNSON                -Borrower

_____ (Seal)
                                  -Borrower

_____ (Seal)
                                  -Borrower

_____ (Seal)
DEE ANN JOHNSON                   -Borrower
BY ATTORNEY IN FACT, JEFFERY M. JOHNSON

_____ (Seal)
                                  -Borrower

_____ (Seal)
                                  -Borrower

*(Sign Original Only)*